O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **HELEN LOUISE FRIAS,** | ) NO. EDCV 13-0932-MAN |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION |
| **CAROLYN W. COLVIN,** | ) AND ORDER |
| **Acting Commissioner of Social Security,** | ) |
| Defendant. | ) |

Plaintiff filed a Complaint on May 22, 2013, seeking review of the denial of plaintiff's application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI").  On June 20, 2013, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge.  The parties filed a Joint Stipulation on March 17, 2014, in which:  plaintiff seeks an order reversing the Commissioner's decision and remanding this case for further administrative proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings.  The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for a period of disability, DIB, and SSI on April 24, 2009. (Administrative Record ("A.R.") 11, 117-26.) Plaintiff, who was born on August 6, 1955[1] (A.R. 18, 117), claims to have been disabled since April 5, 2009, due to: "headaches; double vision; confusion; seizure activity; back pain; chest pain; shortness of breath; numbness, swelling of legs and hands; pain in right leg; bone pain; cramping of hands and feet; depression; and brain tumor." (A.R. 143 (spelling errors corrected).) Plaintiff has past relevant work ("PRW") experience as a home attendant, janitor, housekeeper, and executive housekeeper. (*Id.* 18.)

After the Commissioner denied plaintiff's claim initially and upon consideration, plaintiff requested a hearing. (A.R. 11.) On October 17, 2011, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Michael D. Radensky (the "ALJ"). (*Id.* 11, 20, 25-52.) Vocational expert ("VE") Luis O. Mas also testified. (*Id.* 11, 46-51.) On November 18, 2011, the ALJ denied plaintiff's claim (A.R. 11-20), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-3). That decision is now at issue in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

In his November 18, 2011, decision, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2014, and plaintiff has not engaged in substantial gainful activity since April 5, 2009, the alleged onset date of her disability. (A.R. 13.) The ALJ determined that plaintiff has the severe impairments of history of craniotomy/brain surgery to remove benign tumors with residual headaches and seizure disorder

---

[1] On the alleged disability onset date, plaintiff was 53 years old, which is defined as an individual closely approaching advanced age. (A.R. 18 (citing 20 C.F.R. §§ 404.1563, 416.963).) As noted by the ALJ, plaintiff subsequently changed age category to advanced age. (*Id.*)

and borderline intellectual functioning. (*Id.*) The ALJ concluded, however, that plaintiff does not have an impairment or combination of impairments that meets or medically equals the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). (*Id.* 13-14.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform medium work with the following nonexertional limitations: occasionally climb ramps or stairs; cannot climb ladders, ropes, or scaffolds; other postural activities can be performed frequently; requires appropriate seizure precautions; and limited to unskilled work. (A.R. 15.) In making this finding, the ALJ considered the subjective symptom testimony of plaintiff and the lay witness testimony of plaintiff's daughter, both of whom the ALJ found were not entirely credible, as well as the medical evidence and opinions of record. (*Id.* 15-18.)

Based on plaintiff's age, education,[2] work experience, and RFC, as well as the testimony of the VE, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform," including the jobs of hand packager, dining room attendant, and automotive industry electrician helper. (A.R. 18-19.)

Thus, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, since April 5, 2009, the alleged onset date, through November 18, 2011, the date of the ALJ's decision. (A.R. 21.)

---

[2] The ALJ determined that plaintiff "has a limited education and is able to communicate in English." (A.R. 18.) The ALJ noted that plaintiff's highest level of education was eleventh grade. (A.R. 17.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff claims that the ALJ erred in failing to properly consider: (1) plaintiff's subjective complaints; (2) the lay witness testimony of plaintiff's daughter; and (3) the relevant vocational issues at step 5 of the sequential evaluation process. (Joint Stipulation ("Joint Stip.") at 3.)

## I. The ALJ Properly Evaluated Plaintiff's Credibility.

Once a disability claimant produces objective medical evidence of an underlying impairment that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective testimony as to the severity of the claimant's symptoms must be considered. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins, 466 F.3d at 883. The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *See* Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).

Here, the ALJ concluded that "after careful consideration of the evidence, . . . [plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 16.) Significantly, the ALJ cited no evidence of malingering by plaintiff. Nonetheless, the ALJ determined that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with

the above [RFC] assessment." (*Id.*)  Accordingly, the ALJ's reasons for finding that plaintiff was not credible with respect to her subjective symptom and pain testimony must be "clear and convincing."

Plaintiff alleges that she experiences musculoskeletal pain, swelling, numbness, cramping, seizures, headaches, double vision, vertigo, shortness of breath, chest pain, confusion, and depression. (A.R. 15.)  She estimated she can: lift a couple of pounds with both hands; sit for one hour; stand until her leg goes out; and walk a distance shorter than one block on even terrain and a shorter distance than that on uneven terrain. (*Id.* 15 (citations omitted).)

Plaintiff essentially contends the ALJ improperly relied solely on a lack of objective medical evidence to discount plaintiff's credibility. (Joint Stip. at 6.)  In fact, the ALJ also cited plaintiff's effective management of her symptoms with conservative treatment and inconsistencies in her statements regarding her abilities and the severity of her symptoms.  As explained below, the ALJ's three reasons for partially discrediting plaintiff's subjective testimony -- and the virtually identical testimony by plaintiff's daughter -- are clear and convincing and supported by substantial evidence.

### A. **Objective Medical Evidence**

The ALJ's first reason for discrediting plaintiff's subjective symptom testimony was based on the ALJ's conclusion that the objective medical evidence did not support the severity of the symptoms and limitations reported by plaintiff. (*See, e.g.*, A.R. 18 -- "The undersigned cannot fully credit the [plaintiff's] . . . statements regarding the alleged severity of [her] symptoms and limitations when compared to the objective medical evidence.")

Specifically, the ALJ noted that: plaintiff's CT scans and ECGs show normal results; plaintiff's blurry vision is very occasional; the evidence shows no musculoskeletal abnormalities; any shortness of breath and chest pain are not recurring; the results of plaintiff's physical

examination were "unremarkable"; the consultative psychiatrist's mental status examination showed plaintiff's depressed mood was attributable to her physical problems status post brain tumor removal; and plaintiff has not had any significant and sustained mental health treatment. (A.R. 15-17.) These are valid reasons for discounting plaintiff's subjective complaints. Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (a conflict between subjective complaints and the objective medical evidence in the record undermines a claimant's credibility).

However, the fact that the objective medical evidence does not corroborate the degree of plaintiff's allegedly disabling symptoms, cannot form the "sole basis" for discounting plaintiff's subjective symptom testimony. Burch, 400 F.3d at 681; see Bunnell, 947 F.2d at 34 (noting that "[i]f an adjudicator could reject a claim of disability simply because a claimant fails to produce medical evidence supporting the severity of the pain, there would be no reason for an adjudicator to consider anything other than medical findings"). Accordingly, because the ALJ's first ground cannot, by itself, constitute a clear and convincing reason for discrediting plaintiff's testimony, the ALJ's credibility determination rises or falls with the ALJ's other grounds for discrediting plaintiff.

As discussed below, the ALJ provides other clear and convincing reasons, which are supported by substantial evidence, for discrediting plaintiff's subjective symptom testimony. Accordingly, plaintiff is not entitled to reversal on this ground.

### B.   Conservative Treatment

The ALJ noted that plaintiff currently takes Keppra (Levetiracetam) and Trileptal for her seizures "with positive results." (A.R. 16, 36-41.) He also noted that ibuprofen relieves, at least to some degree, her headaches and other pains. (A.R. 16, 17, 43-45.) The ALJ's reason is supported by substantial evidence.

When asked if the Keppra "has been better" than her prior seizure medication, plaintiff

answered in the affirmative. (A.R. 39; *see also id.* 41 (agreeing that the new seizure medication "is helping a little bit . . . better" than her old medication).) With regard to her headaches and other pain, plaintiff testified that when her legs hurt while working, she "would just take the ibuprofen and, you know, keep going"; she also acknowledged that taking the ibuprofen helps. (*Id.* 43.) Plaintiff also testified that ibuprofen helps her headaches, and when she takes it, her headache is gone within 20 minutes. (*Id.* 44-45.) Thus, the ALJ was entitled to discount plaintiff's credibility based on her positive response to conservative treatment. See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ may infer that claimant's "response to conservative treatment undermines [claimant's] reports regarding the disabling nature of his pain"); Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be controlled effectively with medication are not disabling); 20 C.F.R. § 404.1529(c)(3)(v) (an ALJ may consider treatment that claimant receives for relief of his pain or other symptoms); McKnight v. Comm'r Soc. Sec., No. 1:12-cv-00726-AWI-JLT, 2013 WL 3773864, at *9 (E.D. Cal. July 17, 2013) (ALJ properly discounted physician's opinion based on claimant's positive response to conservative treatment, including knee injections and pain medication).

Additionally, although plaintiff complains of depression, she takes no psychiatric medications to treat it other than Effexor, which she took in 2007 for only two months. (A.R. 270.) The ALJ is permitted to consider plaintiff's lack of treatment for her depression in making his credibility determination. Burch, 400 F.3d at 681; *see also* Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th cir. 2004) (ALJ properly discounted credibility based on claimant's failure to seek treatment for his injury for several months). Therefore, this was a clear and convincing reason to discount plaintiff's subjective statements.

**C.     Plaintiff's Inconsistent Statements**

The ALJ also cited inconsistencies in plaintiff's various statements to discount her subjective symptom testimony. (A.R. 16-17.) The ALJ noted that when plaintiff was examined by the

8

consultative internal medicine examiner, Javinder Singh, MD, she complained only of seizures and did not mention any of her other allegedly disabling impairments or subjective complaints. (*Id.* 17.) Similarly, although plaintiff complains of depression, she told the consultative psychiatric examiner that she stopped working because of her physical problems. (*Id.*) Although plaintiff claims that she can walk less than a block, sit for no more than an hour, and stand only until her leg gives out, she reported to Dr. Minh-Khoi Duong, a board eligible psychiatrist, and Dr. Kim Goldman, clinical psychologist, that she has no difficulties with personal care and is paid by the county for taking care of her granddaughter. (*Id.* 236, 269, 270.) Plaintiff's professed ability to perform these activities without difficulty is inconsistent with her testimony about the severity of her symptoms and functional limitations. The ALJ is entitled to use ordinary techniques of credibility evaluation, including the claimant's prior inconsistent statements concerning her symptoms and other testimony by the claimant that appears less than candid. Smolen, 80 F.3d at 1284.

### D.  Conclusion

Because the ALJ's credibility finding was supported by substantial evidence, the Court "may not engage in second-guessing." Thomas, 278 F.3d at 959 (citation omitted). Plaintiff is not entitled to reversal on this ground.

### II.  The ALJ Properly Evaluated The Lay Witness Testimony.

On May 13, 2009, plaintiff's daughter, Crystal Griego, completed a Third Party Function Report. (A.R. 186-93.) In that report, Ms. Griego stated that plaintiff "experiences pain from lifting, squatting, and standing, and that she gets frustrated easily, yet . . . cleans herself, runs errands, takes her granddaughter to school, watches television, and gets ready for bed." (A.R. 15 (citing *id.* 186-93).)

With respect to this testimony, the ALJ stated that he "cannot fully credit . . . Ms. Griego's statements regarding the alleged severity of the claimant's symptoms and limitations when compared to the objective medical evidence." (A.R. 18.) Plaintiff alleges that this reason alone is a "legally insufficient reason to discredit the supportive statements of the daughter which are otherwise consistent with everything Ms. Frias has stated subjectively and at the hearing under oath." (Joint Stip. at 6-7.)

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Stout, 454 F.3d at 1053) (internal quotation marks omitted). "[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [the claimant's] condition." Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993); 20 C.F.R. § 404.1513(d) ("[W]e may also use evidence from other sources to show the severity of your impairment(s). . . . Other sources include, but are not limited to . . . spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy."). Such testimony is competent evidence and "cannot be disregarded without comment." Bruce, 557 F.3d at 1115 (quoting Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (internal quotation marks omitted)). When rejecting the testimony of a lay witness, an ALJ must give specific reasons that are germane to that witness. Id.

Here, the ALJ specifically found that Ms. Griego's statements were not supported by the objective medical evidence. This is a reason germane to the witness. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (citing Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (an ALJ may discount lay testimony that conflicts with the medical evidence); Bayliss v. Barnhart, 427 f.3d 1211, 1218 (9th Cir. 2005) (inconsistency with medical evidence is a germane reason for discrediting the testimony of a lay witness). As previously discussed, the Court found that the ALJ properly discounted plaintiff's subjective complaints based in part on the fact that those complaints were not supported by the objective medical evidence, and the Court's reasoning

applies equally to Ms. Griego's similar statements.

Moreover, because Ms. Griego's statements were virtually identical to plaintiff's, the ALJ's other valid reasons for discounting plaintiff's statements apply equally to Ms. Griego's similar statements. Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [claimant's] own subjective complaints, and because [layperson's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."); Molina v. Astrue, 674 F.3d 1104, 1122 (9th Cir. 2012) (if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness).

Accordingly, the ALJ properly rejected the lay witness testimony.

### III. There Was No Error At Step 5.

Plaintiff contends that the ALJ erred at step five of his analysis. (Joint Stip. at 14-16.) Specifically, she argues that the three jobs identified by the VE conflicted with plaintiff's RFC finding and the ALJ did not elicit testimony from the VE to explain this conflict. (*Id.*) Defendant concedes that two of the three jobs -- hand packager and cafeteria attendant -- conflicted with plaintiff's RFC finding. (Joint Stip. at 16-17.) Thus, the only job at issue herein is that of automotive electrician helper.

With regard to the job of automotive electrician helper, plaintiff first contends that her past relevant work was "lighter in nature," and, thus, if she could not do that work she must also be precluded from performing this "medium level" occupation." (Joint Stip. at 14-15.) She states that it "makes no sense" that the VE found she could not do her PRW of housekeeper, which is classified as unskilled and light work, yet found she could engage in the "heavier medium level"

occupation of automotive electrician helper. (*Id.* at 15.) A review of the record, however, shows the VE found that an individual with plaintiff's limitations could not perform plaintiff's PRW of housekeeper, because it involved climbing ladders, and not because of any alleged pain. (A.R. 48, 50.) Thus, there is no inconsistency in finding that plaintiff could perform the medium level occupation of automotive electrician helper but not the light level occupation of housekeeper.

Next, plaintiff notes that the automotive electrician helper job requires the individual "to furnish another worker with tools, clean work areas, move materials from one department to another, remove product from conveyors or machines, et cetera[,] . . . and [c]learly this job involves much more than the vocational expert described when he informed the ALJ that basically this job involved installing car stereos." (Joint Stip. at 15-16.) She argues, therefore, that the VE misled the ALJ regarding the "actual *duties* of this occupation." (*Id.* at 16 (emphasis added).)

The record shows that plaintiff's counsel questioned the VE about this occupation, specifically regarding whether it would "expose [plaintiff] to working around heavy machinery or anything else that would fall into the seizure precautions." (A.R. 49.) In response, the VE testified that the individual in such an occupation "help[s] install car stereos and things of that nature" and the fact that the individual had seizure precautions "would [not] be problematic." (A.R. 49-50.) A review of the DOT job description shows that it does not specifically mention car stereos, but does indicate that the position involves "[f]abricating, installing, and repairing objects that have electrical and electronic functioning elements . . . ." (Joint Stip. Ex. C at 1.) This could certainly include car stereo installation. Moreover, the VE did not provide any testimony that the job did not involve the "duties" set forth in the DOT (e.g., furnishing another worker with tools, cleaning work areas, moving materials from one department to another, removing product from conveyors or machines). Thus, the VE did not mislead the ALJ regarding the actual duties of this occupation and any error in naming a specific piece of automotive electrical equipment an individual in this occupation might work on was harmless.

Finally, plaintiff argues that it "would be impossible" for plaintiff to perform the occupation of automotive electrician helper because, such duties would be prohibited by her seizure precautions given the wide range of duties that the job entails, some of which involve machinery and/or conveyors. (Joint Stip. at 16.) Plaintiff overlooks the fact that the VE specifically testified that an individual could perform this job, as discussed above, despite any seizure precautions. Moreover, the VE specifically testified that his testimony was consistent with the DOT. (A.R. 51.) It was reasonable for the ALJ to rely on the VE's testimony that an individual with plaintiff's seizure limitations could perform the occupation of automotive electrician helper, particularly in the light of the absence of any obvious contradiction with the DOT description. Johnson v. Shalala, 60 F.3d 1428, 1435-66 (9th Cir. 1994) (finding it proper for the ALJ to rely on a VE's testimony regarding which jobs the claimant could perform); *cf.* Massachi v. Astrue, 486 F.3d 1149, 1153-54 (9th Cir. 2007) (only after determining whether the VE has deviated from the DOT and whether any deviation is reasonable, can an ALJ properly rely on the VE's testimony as substantial evidence to support a disability determination).

There was no error at step 5.

**CONCLUSION**

Accordingly, for the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: March 4, 2015

_Margaret A. Nagle_
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE